UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOSEPH LESANE, ) | Civil Action No.: 4:21-cv-01174-TER |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| -vs- ) | |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I.  RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB on October 26, 2018, alleging disability beginning on October 26, 2018.  His claims were denied initially and upon reconsideration.  Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a VE testified at a hearing in November 2020.  (Tr. 14).  The Administrative Law Judge (ALJ) issued an unfavorable decision on December 17, 2020, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 24).  Plaintiff filed a request for

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

review of the ALJ's decision, which the Appeals Council denied on February 22, 2021. (Tr. 1-3). On April 21, 2021, Plaintiff filed this action. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on September 7, 1957, and was sixty-one years old on the date last insured. (Tr. 22). Plaintiff has past work as an automobile detailer. [2] (Tr. 21-22).  Plaintiff initially alleged disability due to diabetes, arthritis, pain in both legs, glaucoma, and anemic. (Tr. 74).

**C.     The ALJ's Decision**

In the decision of December 17, 2020, the ALJ made the following findings of fact and conclusions of law  (Tr. 14-24):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 26, 2018 through his date last insured of December 31, 2019 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: bilateral hip degenerative joint disease, glaucoma, and cataracts (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is unable to climb ladders, ropes, or scaffolds. The claimant is limited to no exposure to hazards such as unprotected heights and dangerous machinery but can avoid ordinary workplace hazards. The claimant is

---

[2] DOT# 915.687-034 requires frequent near acuity, frequent depth perception, and occasional color vision. 1991 WL 687878.

       frequently able to perform jobs requiring fine depth perception such as threading a needle but no reading print smaller than 10-point type or columns of numbers. The claimant is unable to operate a motor vehicle.

6. Through the date last insured, the claimant was capable of performing past relevant work as an automobile detailer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 26, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ mischaracterized the evidence as to Plaintiff's vision limitations and that the evidence cited does not support the RFC as to the vision abilities found. (ECF No. 18 at 21-22). Also relevant to this issue, Plaintiff notes a lack of insurance and finances. (ECF No. 18 at 18).

Plaintiff argues the ALJ erred in finding diabetes, peripheral neuropathy, anemia, low back pain, leg pain, joint pain, and knee pain as non-severe impairments. (ECF No. 18 at 13). Plaintiff argues there was not an appropriate function by function analysis. Plaintiff appears to present a combination of impairments argument. (ECF No. 18 at 15-16). Plaintiff argues the ALJ erred in giving a medium RFC based on physical limitations and cane use. (ECF No. 18 at 16-19). Plaintiff argues the ALJ failed to comply with SSR 14-2p as to diabetes. (ECF No. 18 at 19). Defendant argues substantial evidence supports the ALJ's findings.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42

3

U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal

standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

<u>Vision</u>

Plaintiff argues the ALJ mischaracterized the evidence as to Plaintiff's vision limitations and that the evidence cited does not support the RFC as to the vision abilities found. (ECF No. 18 at 21-22). Relevant to this issue, Plaintiff notes a lack of insurance and finances. (ECF No. 18 at 18).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c).

In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

>As to vision and financial issues, Plaintiff testified:
>
>Q Do you have glasses or contacts or?
>A No, I don't have anything, just reading glasses, I kinda of read with.
>Q Okay. What, like readers, you might've gotten at the drug store or something?
>A Yeah.
>Q Okay. You said just non-prescription readers. Okay. Well, let's talk about your ability to see things. Let's talk about your near vision. So with your readers on, are you able to read, like, a magazine or your pill bottles?
>A Yes, if, yes, if they're not, the writing not too small, mostly I can I figure it out, pretty good.
>Q Okay. So if it's, it's like, you know, one of those contracts you get with all that fine print you couldn't read that, but the, the pill bottles and magazine or book you can read?
>A Not that well. Only if it's large print, if it's small print, I can't read it, kinda --get blurry, when, I, can't read it.
>…

A Oh, I said, yes, I, I tried the magnifying glass too. It helps a little.
Q Okay. All right, what about, like, if you're in, in a, in a room? I mean, can you watch TV? Can you see the television?
A I can see it, a lot of times I can't make out what everything, you know, and the colors. I can't, you know, what the kind of colors are, as well, and I can't.
…
Q All right. And do you still use those two different eye drops for your glaucoma?
A. Yes.
Q All right. So let's, let's, what about if you're riding in the car, so you're no longer driving, but let's say you're in the front seat passenger and so someone's driving around. Are you able to, to see the read the stop sign and, and the street signs?
A When, when I get up close to it, I can read it and, you know, traffic lights, I can't hardly, you know, tell the color because I, you know, trying to focus on it long enough. I can see color of the --- light, and I can't really see at, at a distance, like you know, buildings or landscapes on the side of, can't really tell.
..
Q Okay. Well, yeah, she gave you a prescription or she said that, she said that there was a, that you could get glasses. How come you haven't gotten eyeglasses? Prescription glasses?
A I don't know what she gave that, I, I.
Q All right.
A I wish I had the [INAUDIBLE]
…
Q All right, so there was a note in, when the doctor for [SSA] saw you about your eyes. She indicated that you had problems affording the medications. Has that, has that still been the case?
A Yeah, that's a [INAUDIBLE], I couldn't afford it.
…
A I don't have any, I don't, I don't have any insurance.
Q Okay. You don't have any insurance. Everything you pay -- has to be out-of-pocket?
A Right.

(Tr. 50-52;58-59).

In a report to SSA, Plaintiff reported he could read his mail, dollar bills, and road signs.

Plaintiff reported he bumped into things because he could barely see out of his right eye. (Tr. 227).

In the spring of 2019, Plaintiff was seen at Stokes Regional Eye Center by optometrist Ms.

Harvey, O.D. This appears to be a referred SSA consultative exam, but afterwards, it appears

Plaintiff followed up on at least two more occasions. It is noted Plaintiff was first diagnosed with glaucoma in 2017 and it worsened because he did not comply with treatment due to financial cost. (Tr. 314). "His eye pressure responds well to treatment but [he is] unable to afford treatment. Damage cannot be reversed but can only prevent further damage." (Tr. 314). Plaintiff's glaucoma was not currently being treated. (Tr. 315). It was noted: "diabetes can worsen glaucoma." (Tr. 315). In the right eye with best possible correction, Plaintiff could only count fingers at his face. (Tr. 316). His left eye without glasses was 20/60. No refraction record/prescription was capable in right eye. Color perception was not assessed. (Tr. 316). "The patient has severe glaucoma in both eyes which has caused almost complete vision loss of the right eye and blurry vision and side vision loss in the left eye. I prescribed 3 pressure lowering drops which will not improve his vision but will help prevent further damage to the left eye. Given the patient's history of noncompliance, unlikely patient will follow through with treatment and may end up losing vision in his left eye." (Tr. 317). Ms. Harvey opined: "The patient has almost completely lost all vision in his right eye and [has] severe side vision loss on his left eye. I believe the patient is not safe to drive. While his visual acuity centrally is reduced to 20/50, he may be able to perform some basic work activities, though I don't think auto detailing would be a good fit for him." (Tr. 317). Plaintiff had usable vision in his left eye. (Tr. 318). Plaintiff "did not follow prescribed treatment plan due to financial restrictions." (Tr. 321). Samples were given and a prescription for medications. (Tr. 321). Plaintiff was told he was at risk for losing all of his vision if he did not comply with treatment. (Tr. 321). Plaintiff returned to Stokes Eye on May 14, 2019, and was seen by Dr. Zakhour. Plaintiff reported he was using "gttps" until he lost them a week prior. (Tr. 360). Plaintiff reported hazy vision all the time. Impression was

severe stage worsening primary open angle glaucoma of both eyes. "Advised must take gtts[5] and need not return for check because we know iop will be up; gave lumigamn to use qd till picks up drop." (Tr. 362). "Explained legally blind." (Tr. 362).

The ALJ found glaucoma and cataracts were severe impairments. (Tr. 17). The ALJ reviewed vision Listings:

> The claimant does not meet listing 2.02 for impairment of visual acuity because his remaining vision in the better eye after best correction is not 20/200 or less (1F, 5F/4, 7F). The claimant does not meet listing 2.03, dealing with contraction of visual field, because he does not have contraction of the visual field in the better eye with A) the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or B) a mean deviation of -22 or worse, determined by automated static threshold perimetry as described in 2.00A6a (v); or C) a visual field efficiency of 20 percent or less as determined by kinetic perimetry (1F, 5F).

(Tr. 18).

The ALJ found an RFC as to this issue of "frequently able to perform jobs requiring fine depth perception such as threading a needle but no reading print smaller than 10-point type or columns of numbers. The claimant is unable to operate a motor vehicle." (Tr. 18).

In the RFC narrative, the ALJ discussed: 'Vision examinations reveal cataracts, glaucoma, severe reduction in visual field, and abnormal visual acuity including ability to count fingers at face in the right eye (1F/3, 5F, 7F). However, treatment notes reference poor treatment compliance from the claimant, suggesting that the claimant's vision may continue to become worse due to poor compliance (1F/3, 5F/5)." (Tr. 19).

The ALJ cited to the following to support the above RFC of able to frequently thread a needle and read at least 10 point type:

The claimant admitted in his hearing testimony that he has never obtained

---

[5] Gtt appears to stand for guttae, which is the Latin for drops.

>prescription glasses, and stated that he has a pair of non-prescription reading glasses only (Hearing Testimony). He also admitted that he is able to read a magazine and pill bottles with the use of his nonprescription reading glasses, or the use of a magnifying glass (Hearing Testimony). He testified that he stopped driving in February of 2020 because he felt it was no longer safe for him to drive due to his visual impairments, but he admitted that when he is riding in a car he can still see stop signs (Hearing Testimony). In his November 2019 report to the DDS examiner, he reported that he was still driving during the day and could read his mail (4A/5). He also testified that no surgery has been planned for his cataracts (Hearing Testimony). **The record indicates that despite the claimant's abnormal vision examinations, he retains a degree of visual functioning consistent with the above residual functional capacity.**

(Tr. 20)(emphasis added).

Where there is an opinion on record that in one eye Plaintiff can only count fingers in front of his face and a prescription for any correction cannot be prescribed and in the other eye there is blurry vision and severe side vision loss, the ALJ here did not provide a reasonable explanation from the evidence to the RFC finding of ability to frequently thread a needle and read at least 10 point type. (Tr. 314-317, 20).

Moreover, vision records and testimony here show noncompliance with vision treatment was at least in part due to financial restrictions. (Tr. 314, 321; 50-52;58-59). The ALJ stated: "Furthermore, the record makes references to treatment non-compliance (1F/3, 5F/5, 6F/7). The claimant alleged in some cases that his non-compliance was due to financial hardships, but the record makes at least one indication that the claimant reported that he did not take Neurontin consistently because he believed it was not effective (6F/7)." (Tr. 20). The ALJ failed to explain how much or whether Plaintiff's opinion about effectiveness of Neurontin relates to Plaintiff's inability to afford drops and glasses. Further, it is unclear based on the opinion in the record whether such treatment would produce any increase in functional abilities but might only stop worsening to full loss of vision in both eyes.

11

It is well settled that a claimant for Social Security benefits "may not be penalized for failing to seek treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Additionally, SSR 16-3p provides: "We will not find an individual's symptoms inconsistent with the evidence in the record [based on infrequent treatment or failure to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p. The ruling further provides that when taking into account an individual's treatment history, the Administration may consider, among other reasons, that the "individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* The ALJ did not perform a *Lovejoy* or SSR 16-3p analysis as related to financial hardship noncompliance.

The ALJ did not build an accurate and logical bridge from the evidence to his conclusion. *Woods v. Berryhill*, 888 F.3d at 686, 694 (4th Cir. 2018). The ALJ's decision should be remanded for the ALJ to make a reasonable explanation from the evidence to the RFC conclusion as to Plaintiff's vision limitations[6] and make factual findings regarding Plaintiff's financial situation and its impact on his ability to pursue treatment. The ALJ should "make specific factual findings concerning what resources were available to Plaintiff and whether h[is] alleged inability to pay for treatment, diagnostic studies, and prescription medications contributed to h[is] failure to seek medical treatment for h[is] various impairments." *Davis v. Astrue*, No. 8:11-CV-02223-CMC, 2012 WL 5879436, at *11 (D.S.C. Nov. 6, 2012), *report and recommendation adopted*, 2012 WL 5878857 (D.S.C. Nov. 20, 2012).

---

[6] Further, the record notes a relationship between Plaintiff's vision problems and his diabetes; this should also be addressed on remand under Plaintiff's brief argument as to combination of impairments. (Tr. 315)

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps and on the availability of work for Plaintiff in the national economy at Step Five. Therefore, this court will not address the remaining steps in the sequential evaluation or Plaintiff's remaining issues. Upon remand, the ALJ should take into consideration Plaintiff's allegations of error, including but not limited to Plaintiff's arguments regarding non-severe impairments, combination of impairments, and the RFC, and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

August 16, 2022  
Florence, South Carolina

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge